UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| AARON JAMES ALFORD | : | CIVIL ACTION |
|---|---|---|
| | : | |
| VERSUS | : | NUMBER 12-328-RLB |
| | : | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | : : | CONSENT CASE |

## RULING

Plaintiff, Aaron James Alford, seeks judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g) denying the Plaintiff's application for disability insurance benefits "under Title II and part A of Title XVIII of the Social Security Act." (Tr. 108-110). [1]  Both parties having consented to trial on the merits before a United States Magistrate Judge and the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c).  For the reasons assigned below, the decision of the Commissioner is **AFFIRMED** and Plaintiff's appeal will be **DISMISSED**.

**I.     PROCEDURAL HISTORY**

On or about March 9, 2010, Plaintiff filed an application for benefits alleging a disability onset date of January 4, 2001 (Tr. 16, 108).  The claim was initially denied and Plaintiff filed a timely request for a hearing that was held on November 2, 2010 at which Plaintiff, represented by counsel, appeared and testified (Tr. 32-41).

---

[1] References to documents filed in this case is designated by "(rec. doc. [docket entry number(s)] at [page number(s)])".  Reference to the record of administrative proceedings filed in this case is designated by "(Tr. [page number(s)])".

1

An unfavorable decision was rendered by the ALJ on December 7, 2010 (Tr. 16-28), finding that the Plaintiff was not disabled from January 4, 2001, through March 31, 2006, the date last insured. Plaintiff's request for review was denied by the Appeals Council on May 4, 2012 (Tr. 1-6). The ALJ's decision rested as the final decision when the Appeals Council denied the claimant's request for review. The ALJ's final decision is now ripe for review under section 405(g) of the Social Security Act. 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

This court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160,163 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consolidated Edison v. NLRB*, 305 U.S. 197, 229 (1938)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's

decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harrell*, 862 F.2d at 475.

If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994). If the Commissioner fails to apply the correct legal standards, or provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1981).

## III.   ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520 (2008). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability, and if the claimant is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b) (2008). Second, the claimant must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c) (2008). At step three the ALJ must conclude the claimant is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1. *See* 20 C.F.R. § 404.1520(d) (2008).[2] Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of her past relevant work. 20 C.F.R. § 404.1520(e) (2008).

---

[2] If a claimant's impairment meets certain criteria, that claimant's impairments are of such severity that they would prevent any person from performing substantial gainful activity. 20 C.F.R. § 404.1525 (2008).

3

If the claimant is successful at all four of the preceding steps the burden shifts to the Commissioner to prove, considering claimant's residual functional capacity, age, education and past work experience, that he is capable of performing other work. 20 C.F.R § 404.1520(f)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In the ALJ's decision, the ALJ first found that Plaintiff met the insured status requirements of the Act and that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of January 4, 2001 through his date last insured of March 31, 2006 (Tr. 18). At the second step, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the spine and status-post shoulder surgery (Tr. 18). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments (Tr. 18-19). The ALJ specifically considered Listing 1.02 for major dysfunction of a joint and Listing 1.04A for disorders of the spine (Tr. 19).

The ALJ determined that Plaintiff has the residual functioning capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b) (Tr. 19). At the fourth step, the ALJ found that Plaintiff was unable to perform any past relevant work because such work exceeds the limitations of the above referenced RFC. Based on the RFC for the full range of light work, and considering Plaintiff's age, education and work experience, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. The ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time from the alleged onset date through the date last insured (Tr. 26).

IV.     **PLAINTIFF'S ALLEGATIONS OF ERROR AND COMMISSIONER'S RESPONSE**

Plaintiff alleges that the ALJ was in error on several grounds (rec. doc. 2). First, he claims that the ALJ committed error in affording more evidentiary weight to medical opinions of Worker's Compensation physicians that may have performed only one study or examination of Plaintiff as opposed to his treating physicians (rec. doc. 2 at 3). Second, Plaintiff alleges that the ALJ concluded that his bodily injuries were not "severe" impairments (rec. doc. 2 at 4). Finally, Plaintiff alleges that no evidence was submitted or presented demonstrating that other work exists in significant numbers in the national economy that Plaintiff can perform given the RFC and his age, education and work experience (rec. doc. 2 at 2).

With respect to the weight afforded to certain medical opinions, the Commissioner responds that one of the Worker's Compensation physicians was a specialist that saw Plaintiff at least 11 times over a 2 year period and "was, in essence, a treating physician who saw Plaintiff while he was covered under Workers Compensation" (rec. doc. 10 at 6). The Commissioner further notes that the opinions of the Worker's Compensation physicians are not necessarily inconsistent with other treating sources. In addition, one such treating source, Dr. Jeffrey Nicholl, appears to have done nothing more than a one-time evaluation of Plaintiff and therefore his opinion should not be afforded any controlling weight (rec. doc. 10 at 7).

The Commissioner notes that the ALJ did find that Plaintiff had severe impairments and thus any alleged error on that finding is incorrect (rec. doc. 10 at 9).

Finally, the Commissioner asserts that the ALJ's RFC determination and application of the Medical-Vocational Guidelines (Grids) support a finding that the Plaintiff was not disabled at step five (rec. doc. 10 at 9).

## V. ANALYSIS

### A. Treating Source Rule

A physician qualifies as a treating source "if the claimant sees the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s).'" *Huet v. Astrue*, 375 Fed. Appx. 373, 376 (5th Cir. 2010) (quoting 20 C.F.R. § 404.1502) (alteration in original). Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician).

Plaintiff submits that the ALJ's decision favored the opinions of the workman's compensation physicians — Dr. Roger Smith, a neurosurgeon, and Dr. Karen Ortenberg, a pain management specialist — over what he identifies as the "treating physicians" — Dr. Patrick Juneau, a neurosurgeon, and Dr. George R. Cary, an orthopedist.[3]

Despite Plaintiff's contention that Dr. Roger Smith, a neurosurgeon, is merely his "worker's compensation physician," the record indicates that Dr. Smith qualifies as a treating physician who is "familiar with the claimant's impairments, treatments and responses" as he treated and examined Plaintiff on eleven occasions over approximately two years (Tr. 540-52). *See, e.g.*, *Knox v. Astrue*, 660 F. Supp. 2d 790, 811 (S.D. Tex. 2009) (doctor who examined and prescribed medication to plaintiff "on three occasions, at three-month planned intervals" was properly considered a "treating physician"); *Lambert v. Astrue*, No. 09-792, 2012 WL 2254313,

---

[3] "Disability cases typically involve three types of physicians: 1) a treating physician who regularly provides care to the claimant; 2) an examining physician who conducts a one-time physical exam of the claimant; and 3) a reviewing or non-examining physician who has never examined the claimant, but read the claimant's files to provide guidance to the adjudicator." *Giles v. Astrue*, 433 Fed. Appx. 241, 246 (5th Cir. 2011).

6

at *6 (W.D. La. June 14, 2012) (doctor who performed two psychological evaluations in 5 years was plaintiff's treating physician considering that "frequency of this type of psychological evaluation is not atypical").

Dr. Smith first examined Plaintiff in October 2001 and found him to be well developed with some restricted neck motion and mild tenderness (Tr. 541). He also reviewed findings from a March 2001 magnetic resonance imaging (MRI) scan which showed only "mild disc narrowing and minimal osteophyte bridging posteriorly at C5-6" that did "not compress the spinal cord or exiting nerve roots." (Tr. 541). He recommended physical therapy and stated that it would be good for Plaintiff to resume a normal lifestyle. Plaintiff saw Dr. Smith again in December of 2001 after reporting that physical therapy did not improve his pain. Dr. Smith ordered a computer tomography (CT) scan and myelogram of Plaintiff's cervical spine, which showed "small," "mild," and "minimal" findings with no compression of the spinal cord. (Tr. 543). Dr. Smith recommended pain medication (Tr. 544). Dr. Smith continued seeing the Plaintiff until September 2003 and maintained that Plaintiff's cervical spine findings were minimal and did not warrant surgery (Tr. 545-52). He opined that Plaintiff could perform light duty work stating, "I see nothing on these studies that would not allow him to work." (Tr. 547).

The fact that Dr. Smith's treatment relationship with Plaintiff was initiated in connection with his worker's compensation claim does not negate the fact that he treated Plaintiff frequently for two years and that, as a neurosurgeon, he provided "the type of treatment and/or evaluation required for [Plaintiff's] medical condition(s)." 20 C.F.R. § 404.1502; *see also* 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion . . . ."); *Sisson v. Colvin*, 512 Fed. Appx. 762, 766 (10th Cir. 2013) ("the fact that Dr. Jameson was seen in connection with a worker's compensation claim does not in and of itself mandate a finding that

7

Dr. Jameson is not to be considered a treating physician"); *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) ("the ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings") (collecting cases).  Therefore, the ALJ correctly considered Dr. Smith's opinion as a "treating physician."

Dr. Patrick Juneau, also a neurosurgeon, is who Plaintiff identifies as his "treating physician."  The only medical records provided indicate that Dr. Juneau treated Plaintiff in August and October of 2003 and then performed a procedure on Plaintiff in 2006 – far fewer times than Dr. Smith.  In August of 2003, Dr. Juneau opined that Plaintiff was a surgical candidate after examining Plaintiff and reviewing his February 2001 MRI.  Despite finding Plaintiff was a surgical candidate, Dr. Juneau was clear that he "doubted" the surgery would cure all of the pain of which Plaintiff complained.  While Dr. Juneau did indicate that there was flattening of Plaintiff's spinal cord, he failed, however, to specify the degree of flattening.

Dr. Juneau also reviewed Plaintiff's second MRI, conducted on October 18, 2003.  He observed that Plaintiff's second MRI "looks similar to the MRI scan, which was done on March 12, 2001. That is to say there is a weakening of the disc at the C5-6 level, which is similar on both" the March 2001 and October 2003 MRI's.  Reviewing both MRI's, Dr. Juneau ultimately concluded: "I really do not see any progression between these two films, but nonetheless I don't see any regression either." (Tr. 474).

Most significantly, Dr. Juneau never (1) found that Plaintiff was disabled, (2) opined that Plaintiff could or could not work, or (3) assigned any functional limitations to Plaintiff. (Tr. 23, 467-75).

To the extent that Dr. Smith's findings were contradicted by Dr. Juneau, the ALJ correctly gave greater weight to Dr. Smith's opinion. According to the Fifth Circuit's decision in *Newton*, "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Newton*, 209 F.3d at 453.

Those criteria provide that the ALJ consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2).[4]

Concerning the first two factors, the ALJ noted that Plaintiff regularly saw Dr. Smith over a period of two years — the record indicates 11 visits — whereas Dr. Juneau saw Plaintiff only three times — the record indicates Dr. Juneau saw Plaintiff in August and October 2003 and performed surgery on Plaintiff in 2006. The ALJ provided an in-depth discussion of both Dr. Juneau's and Dr. Smith's progress notes from each visit with Plaintiff and detailed their findings, observations and prognosis.

Considering the third factor, the ALJ sufficiently examined the relevant evidence supporting each opinion. Both doctors reviewed the same MRI from 2001, but reached different conclusions. Dr. Juneau felt that Plaintiff was a surgical candidate after noting the MRI showed a flattening of the spinal cord. (Tr. 472). Dr. Smith, on the hand, noted the flattening of the spinal cord shown in the MRI, but specifically indicated the degree of flattening was "only mild"

---

[4] While it is undisputed that the ALJ in the present case did not refer specifically to the *Newton* decision, such a procedure is not mandated. After examining the ALJ's opinion, it is clear the ALJ addressed each of the articulated factors.

9

— something Dr. Juneau failed to specify. Dr. Juneau also indicated that the he "doubted" whether the recommended surgery would alleviate all of Plaintiff's pain. After reviewing Plaintiff's second MRI, Dr. Juneau failed to indicate whether the surgery would alleviate the upper extremity symptoms of which Plaintiff complained. (Tr. 23, 467-75). Moreover, Dr. Smith determined that Plaintiff could perform light duty work, where as Dr. Juneau made no such determination. The ALJ also considered Dr. Smith's light duty work determination under the confines of SSR 96-2p and chose to give his opinion greater weight because there was no objective evidence to the contrary and the available objective evidence showed a history of "symptom magnification." (Tr. 22).

Perhaps most significant, the fourth factor greatly supports the ALJ's decision to place more weight on Dr. Smith's opinion. The ALJ considered numerous physicians who either treated or examined Plaintiff during the relevant time and noted their findings on diagnostic films as "minimal" or "mild" — consistent with Dr. Smith's opinion, not Dr. Juneau's. (Tr. 24). For example, Dr. J.L. Fambrough found no objective evidence for Plaintiff's complaints of pain (Tr. 518) ("I am at quite a loss as to what could be causing this continued pain."). The ALJ found that Plaintiff had a pattern of symptom magnification. (Tr. 20).

Dr. Charles Johnson thought Plaintiff's continued complaints of severe pain were "highly unusual" upon examination and that he does "not have a physiologic reason why [plaintiff] is having so much difficulty returning to overhead activities." (Tr. 358). Dr. Johnson felt that Plaintiff should get "back to some gainful type of employment." (Tr. 359). Dr. Srinivas Ganji felt Plaintiff's alleged pain was more subjective and unsupported by any objective findings. Dr. Hazim Eissa also treated Plaintiff and noted Plaintiff's examination was "unremarkable." (Tr. 433). Dr. Smith's notes indicate that Plaintiff's physical therapist was concerned that Plaintiff

10

was not willing to actively engage in physical therapy as a way to alleviate his symptoms. Moreover, Dr. Juneau's medical records indicate the radiologist who also reviewed Plaintiff's 2003 MRI, along with Dr. Juneau, disagreed with Dr. Juneau's findings. Dr. Juneau thought the 2003 MRI was consistent with Plaintiff's 2001 MRI and showed a weakening and bilateral foraminal narrowing at C5-6. Based upon that, he recommended surgery. The radiologist, however, found only "mild" spondylotic change at C5-6. (Tr. 476).

Factor fives does not support giving either Dr. Smith's or Dr. Juneau's opinion greater weight — both are neurosurgeons. As far as other factors supporting the ALJ's decision to give greater weight to Dr. Smith's findings, the ALJ noted that claimant's worker's compensation claim, which was settled during the relevant time, possibility contributed to Plaintiff's magnification of pain symptoms, which is consistent with Dr. Smith's opinion that Plaintiff's symptoms were not objectively supported.

The court finds substantial evidence supports the ALJ's decision to give Dr. Smith's medical opinion greater weight than Dr. Juneau's opinion. Accordingly, because the ALJ provided a detailed explanation as to why the ALJ gave only limited weight to the opinion of Dr. Juneau, and because Dr. Juneau's opinion was not consistent with the remaining objective evidence, the court affirms the ALJ's decision as to this issue.[5]

B.   ALJ's finding that the Plaintiff's Disabilities were "Severe"

Plaintiff next contends that the ALJ erroneously "concluded that Claimant's bodily injuries was [sic] not '*severe*' impairments." (rec. doc. 2 at 5). This is simply incorrect. The

---

[5] Plaintiff has submitted additional medical evidence to the Court that was not before the ALJ. Because this court's role "is wholly appellate," it may not consider new evidence provided by Plaintiff. *Ellis v. Brown*, 820 F.2d 682, 684 (5th Cir. 1987). In limited circumstances, the court may order additional evidence to be taken before the Commissioner upon remand, but none of those circumstances have been alleged by Plaintiff, nor are they present. *See Bradley v. Brown*, 809 F.2d 1054, 1057-58 (5th Cir. 1987) ("the evidence must be (1) new, (2) material, and (3) good cause must be shown for the failure to incorporate the evidence into the record in a prior proceeding").

ALJ's determination states that "claimant's combination of impairments [i.e., degenerative disc disease and status-post surgery] imposes significant limitations on the ability to perform work-related activities and is thus "severe" within the meaning of the Social Security Act and Regulations." (Tr. 18).  The ALJ did not make an adverse determination at Step Two and Plaintiff's appeal is denied on this ground.

### C.   ALJ's Application of Medical-Vocational Guidelines

Once the ALJ found Plaintiff was unable to perform his past relevant work, the SSA regulations then require a determination of whether Plaintiff could perform any other work available in the national economy. *See* 20 C.F.R. § 404.1520(f) – (g)(1).  At this fifth and final step, the ALJ must consider the claimant's age, education, work experience, and his previously assessed residual functional capacity ("RFC").[6]  Here, based "on a residual functional capacity for the full range of light work,[7] the [ALJ] conclude[d] that, through the date last insured, considering the claimant's age, education, and work experience, a finding of 'not disabled' is directed by Medical-Vocational Rule 202.21." (Tr. 26).

Plaintiff claims the ALJ committed legal error at step five because "*no vocational expert was present at* [his] *hearing, and no evidence was submitted or presented* demonstrating that

---

[6] The ALJ, after reviewing "the entire record" found that Plaintiff "had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b)," without limitation. (Tr. 19).  At step four, the ALJ concluded that Plaintiff could not "perform any past relevant work." (Tr. 25).

[7] According to the regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

other work exists in significant numbers in the national economy that this Claimant, can do, given the residual functional capacity, age, education, and work experience." (rec. doc. 2 at 2). Defendant disagrees and suggests the ALJ properly considered the entire record to determine Plaintiff was capable of performing other work and not disabled. Defendant also points out that Plaintiff "makes no specific argument concerning how the medical evidence in the certified record establishes that he is limited to performing less than the full range of sedentary work." (rec. doc. 10 at 9).

The Fifth Circuit has repeatedly held that: "When the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines . . . and the claimant either suffers only from exertional impairments or his non-exertional impairments do not significantly affect his" RFC, "the ALJ may rely exclusively on the Guidelines in determining whether there is other work available" in the national economy that the claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (ALJ found claimant had "capacity for the full range of light work . . . . Because . . . substantial evidence supports this finding" ALJ could "rely exclusively on the Medical-Vocational Guidelines."); *see also Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) ("Use of the 'Grid Rules' is appropriate when it is established that a claimant suffers only from exertional impairments, or that the claimant's nonexertional impairments do not significantly affect his residual functional capacity."); *Nobles v. Commissioner of Social Sec. Admin.*, No. 00-128, 2002 WL 553735, at *3 (E.D. Tex. April 10, 2002) ("When a claimant suffers only from exertional impairments and an ALJ's findings of residual functional capacity, age, education, and previous work experience coincide with the grids, the Commissioner may rely exclusively on the grids to determine whether work exists in the national economy which claimant can perform.").

13

Here, the ALJ correctly considered Plaintiff's RFC, age, education and work experience and determined that:

> (1) Plaintiff's age of 44 meant he "was a younger individual age 18 – 49, on the date last insured," *see* 20 C.F.R. § 404.1563,
> (2) Plaintiff is a high school graduate and able to communicate in English, *see* 20 C.F.R. § 404.1564; and
> (3) the transferability of Plaintiff's job skills was "not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of 'not disabled,' whether or not the claimant has transferrable job skills."

(Tr. 25). The ALJ then correctly concluded that each of these characteristics directly corresponds to the criteria in Rule 202.21 of Table No. 2 in the Medical-Vocational Guidelines, which directs a finding of "not disabled."

Additionally, there is substantial record evidence to support the ALJ's determination that Plaintiff's impairments and his pain did not impose any non-exertional limitations inconsistent with the ability to perform the full range of light work. The various tests, MRI's, CT scans and diagnoses repeatedly indicated that Plaintiff had no significant spinal or neurological impairments. Repeated medical reports found no objective evidence to support Plaintiff's complaints of chronic pain, or even chronic pain of a nature that would limit his work abilities entirely. Drs. Johnson and Smith both consistently indicated that Plaintiff could return to work and would actually benefit from working and resuming a more normal lifestyle. None of the doctors who treated or examined Plaintiff, including Dr. Juneau, concluded that he was unable to work. And so, the ALJ could conclude that the medical evidence did not support a finding of chronic pain as a non-exertional limitation. Therefore, the ALJ did not err in exclusively relying on the Medical-Vocational Guidelines to find Plaintiff was not disabled and to determine the availability of alternate work.

## VI.     CONCLUSION

Accordingly, for the reasons assigned, the decision of the Commissioner denying the plaintiff's application for disability insurance benefits will be affirmed, and the complaint of Aaron James Alford will be **DISMISSED**, with prejudice.

Signed in Baton Rouge, Louisiana, on September 11, 2013.

     _____
**RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE**